

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BOBBY JOHNSON, | § | No. 08-13-00260-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 5 |
| JUAN ENRIQUEZ, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2011-1951) |
| | § | |

## **O P I N I O N**

In this dog-bite case tried to a jury, Bobby Johnson appeals a take-nothing judgment in favor of Juan Enriquez. In two issues, Johnson argues the evidence is legally and factually insufficient to support the trial court's take-nothing judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Johnson sued Enriquez to recover for a dog bite he allegedly sustained to his left thigh while walking by Enriquez's home on April 27, 2010. Johnson asserted claims for negligence, negligence *per se*, premises liability, and strict liability. Enriquez entered a general denial.

At the time of the incident, Enriquez and his wife, Nancy, owned three dogs: two

St. Bernard's—Daisy and Beethoven—and a Basset Hound—Mona.[1]  The dogs were permitted to roam on the property, including on the cement patio located across the front of the home.   The patio was enclosed by a high wrought-iron fence, part of which was set in a low concrete retaining wall.   The fence separated the patio from the adjacent public sidewalk.   Estimating from the photographs admitted at trial, the gap between the fence's vertical rods was no more than six inches.   Because of these gaps, Enriquez placed screening, similar to chicken wire, on the fence's panels to prevent puppies from escaping and children from sticking their hands through the gaps.  But Enriquez did not weld the screening onto the fence.   Instead, he affixed it to the rods by wire.  Not surprisingly, Beethoven and Daisy brought down the screening routinely, inducing Enriquez to "fix it" "every two or three other [sic] days, depending on how [he] saw it and how tired [he] arrived from work."

Johnson testified he was in Enriquez's neighborhood on the day in question searching for jobs as required by the terms of his probation.   According to Johnson:

> I was looking at my paper to see where this address was going to be at.   And I was walking by this house and I felt something real stinging and it felt hot on my leg. And I looked back and there was a hole in my leg and blood on the back of my jeans.   I looked back and the St. Bernard that was walking away from the fence had bit me.

Johnson did not actually witness the dog—who he suspected was Beethoven—bite him.   Nor was Johnson certain where he was in relation to the fence when Beethoven allegedly bit him.  Although Johnson was adamant that there was no screening on the fence and that he was on the sidewalk, he could not remember if he "was in the middle of the sidewalk or on the side." Nevertheless, Johnson conceded he was not close to the fence:

[DEFENDANT'S COUNSEL]:   Well, sir, do you remember when your

---

[1]  Beethoven, suffering from cancer, was euthanized sometime before trial.

deposition was taken on July the 12th of 2012?

[JOHNSON]: No. I didn't take a tape measure to measure the sidewalk. I just know I was on the sidewalk.

[DEFENDANT'S COUNSEL]: Okay. Well, do you remember being asked at that time -- and let me show you. Start right here. Oh, sorry. You can't see that.

Okay. It says right here: And you were -- you were close to the --

No. I was in the middle of the sidewalk.

Do you see that?

And then I asked you: So, you weren't close to the fence?

No. He come through the fence.

The Enriquezes disputed the notion that Beethoven attacked Johnson through the fence. Enriquez testified it was unlikely that Beethoven bit Johnson because Beethoven was meek and had never acted aggressively or bitten anyone. Nancy testified Beethoven could not have bitten Johnson "because the iron works that we have at our house are too narrow and the head of the dog does not fit through it." But the Enriquezes conceded that, before the alleged incident, they had seen Beethoven stick his snout through the fencing. Enriquez also conceded that Beethoven could open and close his mouth while his snout was jutting through the fencing and that the screening may not have been secured to the fence on the day of the incident. Even so, Enriquez testified Beethoven's snout was not long enough to reach the middle of the sidewalk.

As established by the parties' testimony, the contested issues at trial were whether Beethoven bit Johnson, and if he did, whether the Enriquezes were liable for Johnson's injuries[2] and medical expenses under the various theories of liability asserted by Johnson. In prosecuting

_____

[2] Johnson testified that the injury to his thigh—a puncture wound—hurt and required medical treatment. He further testified that he continued to experience pain, which he described as "[r]eal bad burning like my leg is on fire. And it burns and it just goes numb. I don't have feeling in it."

his negligence *per se* claim, Johnson relied on a specific municipal animal-control ordinance (hereinafter, "the Ordinance"). Titled "Restraint," the Ordinance provides that:

> Every person owning or having charge, care, custody or control of any animal shall keep such animal exclusively upon his own premises by means of physical restraint, provided, however, that such animal may be off such premises if it is under direct physical control of a competent person.

El Paso, Tex., Ordinance No. 16229 § 1 (2006), as amended and codified in The City of El Paso, Texas, Code of Ordinances, § 7.08.030. Johnson claimed that on the day of the alleged attack, Enriquez violated the ordinance, and was, therefore, negligent *per se*.

At the close of evidence, both parties moved for a directed verdict on Johnson's negligence *per se* claim. The trial court denied Johnson's motion outright but granted Enriquez' with a caveat.[3] The trial court informed the parties that it was going "to instruct the jury as to what the standard is and the standard is outlined in [the Ordinance]." Both parties were dissatisfied with the trial court's decision and moved for reconsideration during the charge conference. Enriquez argued the instruction was unwarranted and asked that it be submitted as "a negligence definition only." Johnson contended the instruction would confuse the jurors because it failed to inform them that Enriquez "is negligent if he violated [the Ordinance]" and urged the trial court to adopt and submit his instruction.[4] The trial court overruled the parties' objections and submitted a charge containing an instruction tracking the language of the Ordinance and the following question:

> Did the negligence, if any, of JUAN ENRIQUEZ proximately cause the occurrence

---

[3] The trial court also granted Enriquez' motions for directed verdict on Johnson's strict liability and premise liability claims. Johnson does not complain on appeal about the propriety of these rulings.

[4] Johnson's proposed instruction read:

> You are instructed that Defendant Juan Enriquez was negligent if he failed to keep the St. Bernard dog exclusively upon his own premises by means of physical restraint.

in question?

The jury answered, "No." In accordance with the jury's verdict, the trial court signed a take-nothing judgment. Johnson moved for a new trial on three grounds: (1) the evidence established that Enriquez was negligent *per se* as a matter of law; (2) the jury's verdict was against the overwhelming weight of the evidence; and (3) the trial court's instruction was confusing and likely resulted in an improper verdict. The motion was denied by operation of law.[5] On appeal, Johnson pursues only the first and second grounds raised in his motion for new trial.

## NEGLIGENCE *PER SE*

In his first issue, Johnson contends the evidence is legally insufficient to support the jury's verdict because, as a matter of law, Enriquez was liable under the theory of negligence *per se*. According to Johnson, Enriquez was negligent *per se* because his actions violated the Ordinance. We disagree.

### *Standard of Review*

To prevail on his "matter of law" challenge, Johnson must demonstrate that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In determining whether Johnson has succeeded, we employ a two-prong analysis. We first examine the record for evidence that supports the adverse finding, while disregarding contrary evidence. *Id.* If no evidence supports the adverse finding, we then examine the entire record to determine if the contrary proposition is established as a matter

---

[5] Johnson obtained a setting for a hearing on his motion for new trial. But the hearing took place two days after the motion had been overruled by operation of law, a fact pointed out by Enriquez in his response and by the trial court at the hearing. Although Johnson acknowledged that his motion had been overruled by operation of law, he argued that the trial court was within its plenary power to grant it because thirty days had not yet elapsed from the date it had been overruled by operation of law. The trial court ruled that it would not exercise its plenary power because the motion had already been overruled by operation of law. Despite its ruling, the trial court permitted Johnson to argue the motion's merits. Johnson does not raise an issue on appeal concerning the trial court's ruling.

of law.  *Id*.  In considering the evidence, we view it in the light favorable to the verdict and, unless doing so is unreasonable, presume the jury resolved all conflicts in accordance with its verdict.  *City of Keller v. Wilson*, 168 S.W.3d 802, 819-21 (Tex. 2005).

### *Applicable Law*

Negligence *per se* is not a separate cause of action independent of a common-law negligence cause of action.  *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex.App.--El Paso 1994, writ denied).  Rather, negligence *per se* is merely one method of proving a breach of duty, a requisite element of any negligence cause of action.  *Id*.  As explained by the Supreme Court, "[n]egligence *per se* is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."  *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).  Accordingly, a plaintiff asserting negligence *per se* is not required to prove that the defendant failed to act as a reasonably prudent person would have acted under the same or similar circumstances.  *Id*.  Instead, the plaintiff must prove that:

> (1)   the defendant violated a statute or ordinance setting an applicable standard of care;
>
> (2)   the breach was the proximate cause of the plaintiff's damages; and
>
> (3)   the statute was designed to prevent an injury to that class of persons to which the plaintiff belongs.

*Trujillo v. Carrasco*, 318 S.W.3d 455, 458 (Tex.App.--El Paso 2010, no pet.).

### *Discussion*

Johnson has failed to prove that, as a matter of law, Enriquez was liable under the theory of negligence *per se*.   When viewed in the light most favorable to the jury's verdict, and contrary to

6

Johnson's assertion, the evidence does not conclusively establish that Enriquez proximately caused Johnson's damages by failing to keep Beethoven "exclusively upon his own premises by means of physical restraint" as required by the Ordinance.

Johnson's negligence *per se* claim is premised on the notion that Beethoven bit him. In his brief, he asserts "[t]he undisputed evidence at trial . . . established that . . . [he] . . . was bitten by Enriquez's dog." But Johnson is mistaken. As Johnson's counsel remarked during closing arguments, the case was "a credibility contest." Determining the credibility of the witnesses and the weight of their testimony lies within the exclusive province of the jury, as does the responsibility for resolving conflicts in the evidence. *City of Keller*, 168 S.W.3d at 819-21. In fulfilling these roles, the jury may choose to believe one witness and disbelieve another, and we may not reweigh the evidence and set aside a finding merely because we believe a different result is more reasonable. *Id*. Here, by finding no negligence on Enriquez's part, the jury apparently chose to disbelieve Johnson's testimony that he was bitten by Beethoven. The evidence adduced at trial justified the jury's finding.

Johnson did not witness Beethoven bite him, nor did he observe Beethoven's head or snout through the fence. Although Johnson claimed Beethoven came through the fence, the Enriquezes were adamant that Beethoven's head was too big to fit through the gaps in the fence, and the photographs admitted at trial revealed that the gaps were not wide. Johnson, by his own admission, was not near the fence but rather in the middle of the sidewalk, an area where Enriquez was certain Beethoven's snout could not reach. Further, Enriquez testified Beethoven was meek and had never acted aggressively or bitten anyone. These traits may be a factor in determining whether a plaintiff in a dog-bite case has proved proximate cause. *Trujillo*, 318 S.W.3d at

7

459-60.

In sum, the evidence adduced at trial is legally sufficient to support the jury's verdict. Accordingly, Johnson has failed to establish the contrary proposition as a matter of law.

Johnson's first issue is overruled.

## NEGLIGENCE

In his second issue, Johnson argues the evidence is factually insufficient to support the jury's verdict. Specifically, Johnson maintains "that the jury finding of no-negligence was so against the great weight and preponderance of the evidence that it was clearly wrong and manifestly unjust." We disagree.

### *Standard of Review*

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof at trial, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. We will set aside the adverse finding only if, after considering and weighing all the evidence, we conclude the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow Chem. Co*., 46 S.W.3d at 242.

### *Applicable Law*

The owner of a dog can be subject to liability for his negligent handling of the dog. *Bushnell v. Mott*, 254 S.W.3d 451, 452 (Tex. 2008)(per curiam). To recover on a negligent-handling claim, a plaintiff must prove:

(1) the defendant owned or possessed the dog;

(2) the defendant owed a duty to exercise reasonable care to prevent the dog from injuring others;

(3)   the defendant breached that duty; and

(4)   the defendant's breach proximately caused the plaintiff's injury.

*Trujillo*, 318 S.W.3d at 459.

### *Discussion*

Johnson has failed to demonstrate that the evidence supporting the jury's verdict is factually insufficient.   When considered and weighed in a neutral light, and contrary to Johnson's assertion, the evidence supporting the jury's finding that Enriquez was not negligent in handling Beethoven is not so weak or the finding is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Johnson argues the evidence is factually insufficient to support the jury's verdict for the same reasons the evidence conclusively established Enriquez was negligent *per se*.   He also contends additional reasons support his argument.   In Johnson's words, those additional reasons are Enriquez' "general aware[ness] 'of circumstances that might cause an ordinarily gentle animal to attack other animals or people' and [his] fail[ure] to exercise reasonable care to ensure the chicken-wire netting remained up . . . ."   In contending Enriquez was aware of the danger posed by Beethoven, Johnson directs our attention to the evidence that Enriquez placed the screening on the fence to prevent children from putting their hands through the fence, attempted to ensure the screening remained affixed to the fence, and witnessed Beethoven stick his snout through the fence on previous occasions.   But this circumstantial evidence merely shows that it was possible Beethoven could have bitten Johnson.   When weighed against the evidence discussed above in our resolution of Johnson's legal sufficiency challenge—*i.e.*, no direct evidence that Beethoven bit Johnson and uncontradicted evidence that Beethoven could not have bitten Johnson if he were in

9

the middle of the sidewalk—the circumstantial evidence on which Johnson relies is not so strong that it tends logically and by reasonable inference to establish Beethoven bit him.

Johnson's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


February 26, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.